**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KENNETH TATUM | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:26-cv-00710-SRC |
| | ) |
| SODEXO, INC., SSM HEALTH DEPAUL | ) |
| HOSPITAL ST. LOUIS, and JAMES | ) |
| NELSON | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT FOR DAMAGES**
**(JURY TRIAL DEMANDED)**

COMES NOW Plaintiff Kenneth Tatum, by and through undersigned counsel, and for his

First Amended Complaint for Damages against Defendants Sodexo, Inc., SSM Health DePaul

Hospital St. Louis, and James Nelson, alleges and states as follows:

**PARTIES**

1. Plaintiff Kenneth Tatum (hereinafter "Plaintiff") is a resident of St. Louis County,

Missouri.

2. Defendant Sodexo, Inc. (hereinafter "Sodexo") is a corporation incorporated under the

laws of the State of Delaware with its principal place of business in Maryland. Sodexo is

authorized to do business in the State of Missouri and was Plaintiff's employer at all relevant

times through its wholly owned subsidiary SDH Services East, LLC, which acted as Plaintiff's

payroll entity.

3. Defendant SSM Health DePaul Hospital St. Louis (hereinafter "DePaul") is a fictitious

name registered in Missouri and operated by SSM Health Care St. Louis. DePaul owned,

operated, and controlled the premises and workplace located at 12303 DePaul Drive, St. Louis,

Missouri 63044 (hereinafter "the Premises"), where Plaintiff was assigned to work. DePaul exercised control over the physical premises, workplace conditions, common areas, and surveillance systems located therein.

4. Defendant James Nelson (hereinafter "Nelson") is an individual who, upon information and belief, resides in the State of Missouri. At all relevant times, Nelson was employed by Sodexo as a General Manager or supervisor and exercised direct authority over Plaintiff's work schedule, attendance, and daily job duties.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. Plaintiff is a citizen of Missouri. Defendant Sodexo is a citizen of Delaware and Maryland. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same nucleus of operative facts as the claims over which this Court has original jurisdiction.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a), as this action was removed from the Circuit Court of St. Louis County, Missouri.

## ADMINISTRATIVE EXHAUSTION

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), which was dual-filed with the Missouri Human Rights Commission.

9. More than 180 days elapsed following the filing of the Charge, and Plaintiff received a Notice of Right to Sue dated December 23, 2025.

10. Plaintiff has exhausted all administrative remedies required by law with respect to his Missouri Human Rights Act claims.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

11. Plaintiff began working for Defendants in approximately October 2024 and initially performed his job successfully.

12. In November 2024, Plaintiff received a workplace award recognizing his job performance.

13. Plaintiff was assigned to work at the Premises, DePaul's hospital facility located at 12303 DePaul Drive, St. Louis, Missouri 63044, where DePaul exercised control over the physical environment, common areas, and security systems.

### B. Nelson's Sexually Harassing Conduct

14. Beginning in November 2024, Nelson began engaging in unwelcome and inappropriate conduct of a sexual nature directed at Plaintiff.

15. Nelson initiated contact by sending Plaintiff a text message requesting that Plaintiff send him a photograph of himself in his work uniform, which Plaintiff found inappropriate and did not encourage.

16. Despite Plaintiff's lack of interest and attempts to redirect or discourage the conduct, Nelson continued sending sexually suggestive and inappropriate text messages throughout November and December 2024 and into January 2025.

17. Nelson's conduct included: repeated personal and sexually suggestive communications; commentary regarding Plaintiff's personal relationships; statements implying sexual encounters

with others; and continued efforts to engage Plaintiff in non-work-related and inappropriate discussion.

18. Plaintiff did not welcome this conduct and attempted to distance himself from Nelson.

### C. Nelson's Physical Battery of Plaintiff

19. On or about January 10, 2025, Nelson physically grabbed and pulled Plaintiff's hair in the workplace breakroom at the Premises.

20. This physical contact was intentional, unwelcome, offensive, and humiliating, and constituted harmful and offensive contact with Plaintiff's person without his consent.

21. The physical contact was not accidental, incidental, or reasonably necessary to any legitimate workplace activity. Nelson's act of grabbing and pulling Plaintiff's hair was a deliberate, intentional physical intrusion on Plaintiff's person.

22. As a direct result of the battery, Plaintiff suffered immediate physical discomfort, fear, embarrassment, anxiety, and humiliation.

23. Following the physical incident, Nelson continued making inappropriate and sexually charged remarks toward Plaintiff in the workplace.

### D. DePaul's Control Over the Premises and Surveillance Systems

24. The breakroom where the physical battery occurred was a common area at the Premises owned, operated, and controlled by DePaul.

25. The Premises and its common areas, including the breakroom, were monitored by surveillance cameras owned, maintained, and/or controlled by DePaul.

26. DePaul exercised exclusive or primary control over the surveillance systems, camera feeds, and footage retention policies at the Premises.

27. DePaul exercised control over who could access the camera system and its footage. When Plaintiff reported the incident and requested that the breakroom surveillance footage be reviewed, he was informed that Human Resources lacked access to the camera system, underscoring that DePaul, not Sodexo, controlled the surveillance infrastructure at the Premises.

28. DePaul, as owner and operator of the Premises, had an independent duty to maintain reasonably safe conditions at the Premises and to take reasonable steps to address known dangerous or harassing conditions occurring therein.

29. Plaintiff reported the harassment and physical battery to Human Resources. Despite this notice, Defendants, including DePaul, failed to take prompt or appropriate remedial action.

### E. Constructive Discharge

30. Plaintiff was reluctant to report the conduct due to Nelson's supervisory authority and concern that management would not take corrective action.

31. As the harassment continued, Plaintiff attempted to avoid Nelson by missing work or arriving late.

32. As a direct result of the ongoing harassment, the physical battery, and Defendants' failure to provide a safe workplace, Plaintiff's working conditions became intolerable.

33. A reasonable person in Plaintiff's position would have felt compelled to leave employment under the same circumstances.

34. Plaintiff ultimately left his employment on or about January 13, 2025, because the workplace had become hostile, unsafe, and humiliating, not due to attendance issues or discipline.

### F. Spoliation of Evidence

35. Defendants maintained surveillance cameras covering the breakroom where Nelson physically battered Plaintiff.

36. Defendants had exclusive or primary control over this surveillance footage.

37. Following Plaintiff's complaints and his request that the breakroom footage be reviewed, Defendants knew or reasonably should have known that the surveillance footage constituted relevant evidence in a foreseeable civil claim.

38. Defendants' duty to preserve relevant evidence arose no later than the date Plaintiff reported the physical incident and requested that the footage be preserved and reviewed.

39. Defendants failed to implement a litigation hold or otherwise take steps to preserve the surveillance footage.

40. During the EEOC investigation, Defendants represented that surveillance footage is automatically deleted after approximately thirty (30) days.

41. Defendants allowed the footage to be destroyed in accordance with routine internal retention policies despite their obligation to preserve it.

42. Defendants' failure to preserve this evidence was negligent at minimum, and has prejudiced Plaintiff's ability to present his claims. Plaintiff will seek appropriate evidentiary relief, including adverse inference instructions, at trial.

### CAUSES OF ACTION

### COUNT I — Sexual Harassment/Hostile Work Environment
### (Missouri Human Rights Act — Against All Defendants)

43. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth herein.

44. Plaintiff was subjected to unwelcome harassment based on sex.

45. The harassment included sexualized communications, repeated inappropriate conduct, and unwelcome physical touching of a sexual nature.

46. The harassment was severe and/or pervasive and altered the terms and conditions of Plaintiff's employment.

47. Defendant Nelson was Plaintiff's supervisor, and Defendant Sodexo is vicariously liable for his conduct under the Missouri Human Rights Act.

48. Defendant DePaul, as a joint employer or as the entity that owned and controlled the Premises where the harassment occurred, participated in the hostile work environment by exercising control over the workplace, by failing to take action to address harassment of which it knew or should have known, and by failing to preserve relevant evidence.

49. Defendants failed to prevent, investigate, or promptly correct the harassment.

50. The conduct of Defendants was intentional, reckless, and/or malicious.

51. Defendants' actions and omissions violate the Missouri Human Rights Act, §§ 213.010 et seq., RSMo.

## COUNT II — Common Law Battery
### (Against Defendant Nelson, and Against Defendant Sodexo Under the Doctrine of Respondeat Superior)

52. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth herein.

53. On or about January 10, 2025, Defendant Nelson intentionally and without justification physically grabbed and pulled Plaintiff's hair in the workplace breakroom at the Premises.

54. Nelson's act constituted intentional, harmful, and offensive contact with Plaintiff's person.

55. Plaintiff did not consent to this contact. The contact was unwelcome, offensive, and humiliating.

56. Nelson's conduct in grabbing and pulling Plaintiff's hair was not privileged, justified, or excused under any applicable law.

57. As a direct and proximate result of Nelson's battery, Plaintiff suffered physical discomfort, fear, emotional distress, humiliation, anxiety, and loss of dignity.

58. At the time of the battery, Nelson was acting within the scope of his employment as a supervisor and General Manager employed by Sodexo. Alternatively, Sodexo is liable under respondeat superior because Nelson's position of supervisory authority over Plaintiff, a position conferred by and for the benefit of Sodexo, created the opportunity and context for the battery. Sodexo placed Nelson in a position of authority over Plaintiff and is responsible for his conduct in that capacity.

59. Nelson's conduct was intentional, malicious, and undertaken with deliberate disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages against Nelson individually and against Sodexo.

### COUNT III — Premises Liability/Negligence
### (Against Defendant SSM Health DePaul Hospital St. Louis)

60. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth herein.

61. DePaul owned, operated, managed, and controlled the Premises, including the breakroom where Nelson physically battered Plaintiff and the common areas where ongoing sexual harassment occurred.

62. DePaul owed a duty of reasonable care to persons, including Plaintiff, who were lawfully present and working at the Premises to maintain the Premises in a reasonably safe condition.

63. DePaul had actual and/or constructive knowledge of the dangerous and harassing conditions at the Premises, including Nelson's pattern of inappropriate conduct toward Plaintiff, through its management of the Premises and through notice conveyed when Plaintiff attempted to report the conduct.

64. Notwithstanding its duty and knowledge, DePaul negligently failed to take reasonable steps to address, correct, or eliminate the known dangerous and harassing conditions at the Premises.

65. DePaul negligently failed to maintain, monitor, or employ its surveillance systems in a manner that would have deterred or detected misconduct occurring in common areas under its control.

66. DePaul further breached its duty of care by failing to preserve surveillance footage of the breakroom battery after it knew or should have known that the footage was material evidence in a foreseeable claim. DePaul had exclusive control over the camera system and exclusively controlled the footage retention policies. Its failure to preserve the footage constituted a breach of its duty to Plaintiff independent of any employment relationship.

67. As a direct and proximate result of DePaul's negligence, Plaintiff suffered physical harm, emotional distress, humiliation, anxiety, fear, loss of wages, and loss of dignity.

68. DePaul's conduct in ignoring known dangerous conditions at the Premises it owned and controlled, and its deliberate failure to preserve material evidence after notice, was sufficiently reckless and indifferent to Plaintiff's rights to warrant the imposition of punitive damages.

## DAMAGES

69. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer physical harm and bodily discomfort; emotional distress, anxiety, and

fear; humiliation and loss of dignity; lost wages and lost employment benefits; loss of future earning capacity; expenses incurred as a result of Defendants' conduct; and other compensable damages.

70. Defendants' conduct was intentional, reckless, malicious, and/or demonstrated a complete indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff Kenneth Tatum respectfully prays for judgment against Defendants, jointly and severally where applicable, as follows: compensatory damages in excess of $75,000, exclusive of interest and costs; punitive damages as appropriate against each Defendant; back pay, front pay, and/or reinstatement as appropriate; pre-judgment and post-judgment interest as allowed by law; Plaintiff's costs, expenses, and attorney's fees incurred herein; adverse inference instructions and other appropriate evidentiary sanctions arising from Defendants' spoliation of surveillance footage; and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
The Anderson Law Office, LLC

/s/ Kelley Anderson

Kelley Anderson, MO67928
PO Box 56671
Saint Louis, MO 63156
Telephone: (314) 203-4503
Facsimile: (314) 754-8294
Email: kelley@andersonlawllc.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 12, 2026, the foregoing Motion to Remand and Memorandum of Law in Support was served via the Court's CM/ECF system upon all counsel of record, including:

Erin E. Williams, Esq.
Madeline Brown Miller, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
erin.williams@ogletree.com
madeline.brown@ogletree.com

/s/ Kelley Anderson